IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


NYKA O'CONNOR,
    Plaintiff,

vs.                                            Case No.: 3:06cv45/RV/EMT

STATE OF FLORIDA, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

       This cause is before the court on Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 15). Leave to proceed in forma pauperis has been granted (Doc. 6).

       Because Plaintiff is proceeding in forma pauperis, the court is required to dismiss the case at any time if it determines that the "action or appeal" is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(B). A complaint is frivolous under § 1915(d) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," id. at 327, 109 S. Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed only if it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. Brown v. Budget Rent-A-Car Sys., Inc., 119

F.3d 922, 923 (11th Cir. 1997).  Upon review of the complaint, this court concludes that dismissal of Plaintiff's claims is warranted.

Plaintiff names five Defendants in this action:  the Florida Department of Corrections (DOC); James Crosby, former Secretary of the DOC; J. Moore and Orlester Dickens, representatives of the Secretary; and M. Hall, Assistant Warden at Century Correctional Institution (CCI).  Plaintiff claims that Defendants violated the Due Process Clause and committed trademark infringement and "contract violations" by assigning him to close management status.

Plaintiff alleges the following facts in support of his claims.  In June of 2005, while incarcerated at CCI, Plaintiff was referred, recommended, and assigned to close management status (Doc. 15 at 7).  Defendant Hall was a member of the classification team that reviewed the referral and recommended Plaintiff's assignment to close management (*id*.).  In doing so, Defendant Hall used Plaintiff's "copyrighted trademark/trade name" without Plaintiff's consent and without a contract permitting him to do so (*id*.).  Additionally, Defendant Hall considered disciplinary reports incurred by Plaintiff prior to January of 2003, the date a state appellate court reversed Plaintiff's conviction and remanded his case for a new trial (*id*.).  Plaintiff also asserts that a disciplinary report which prompted his referral to the classification team for close management consideration was overturned on administrative appeal (*id*).  Plaintiff states that he appealed his placement on close management at the institutional level and with the Secretary's office, but Defendants denied his appeals (*id*.).

Plaintiff claims that Defendants committed copyright infringement by using his name without his consent (*id*. at 7, 8).  Additionally, Defendants committed "contract violations" by assigning him to close management without a contract or agreement with him to do so (*id*.).  Finally, Defendants violated his due process rights by considering past and overturned disciplinary reports in their decision to recommend assignment to close management (*id*.).

As relief, Plaintiff seeks an injunction enjoining Defendants from using his "copyright/trademark" and enjoining them from enforcing an invalid "contract" assigning him to close management (*id*. at 8).  Additionally, he seeks monetary relief to compensate him for each use of his copyrighted trademark and for each day he has spent on close management status (*id*.).

Initially, Plaintiff's claims of trademark and contract violations are frivolous. Plaintiff's theory that Defendants' use of his legal name to identify him in matters concerning his incarceration constitutes a trademark infringement is indisputably meritless, as is his claim that admitting him to close management without his consent constituted a breach of contract.

Plaintiff's due process claims regarding his assignment to close management are also subject to dismissal. The threshold issue is whether Plaintiff has a liberty interest in freedom from assignment to close management status. A liberty interest protected by the Fourteenth Amendment may arise from the Due Process Clause itself, or state law may create a liberty interest. *See* Sandin v. Conner, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995). The Supreme Court recognized that States may create liberty interests which are protected by the Due Process Clause, but these interests are generally limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, 515 U.S. at 484. Examples of such cases are where an inmate is involuntarily transferred to a mental hospital, or where an inmate is involuntarily subjected to the administration of pyschotropic drugs. *Id.* (citations omitted). Although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 485 (citations, quotation marks, and alteration omitted). Confinement apart from the general population, for reasons of security or the order and effective management of the institution, is a necessary limitation of privileges and rights that incarceration demands.

Addressing the issue of an inmate's confinement in administrative segregation, the Supreme Court has noted that "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt v. Helms, 459 U.S. 460, 468, 103 S. Ct. 864, 869, 74 L. Ed. 2d 675 (1983), *receded from on other grounds by* Sandin, 515 U.S. 472, 481, 115 S. Ct. 2293, 2299, 132 L. Ed. 2d 418 (concluding that the focus of the liberty interest inquiry should be on the nature of the deprivation rather than on the language of the state prison regulation). The Court has also cautioned,

however, that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate.  Prison officials must engage in some sort of periodic review of the confinement of such inmates."  Hewitt, 459 U.S. at 477 n.9.

The provisions of the Florida Administrative Code governing close management confinement define it as follows:

> The confinement of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, is a necessary limitation of privileges and rights that incarceration demands, especially under circumstances where the inmate, through his behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others.

Fla. Admin. Code Chp. 33-601.800(1)(d).  It provides for three levels, CMI, CMII, and CMIII, with CMI being the most restrictive single cell housing level, and CMIII being the least restrictive housing.  *Id.*, 33-601.800(1)(e).  The conditions in close management units are the same as the general inmate population, unless there are facts to suggest that exceptions are necessary on an individual basis for the welfare of the inmate or the security of the institution.  *Id.*, 33-601.800(10).  However, the programs and privileges available to close management inmates are restricted, for example, inmates assigned to close management are not eligible for work assignments; educational opportunities are limited to those that the inmate can perform in his cell; the number of books that may be checked out from the library is limited to three; the number of magazine and newspaper subscriptions is limited; and the number and length of telephone calls and personal visits is limited. *Id.*, 33.601.800(2)(a)(2), (11).

Additionally, the administrative regulations provide that before an inmate may be assigned to close management, he is entitled to a hearing before the institutional classification team.  *Id.*, 33-601.800(3).  The regulations also require that the inmate receive the following:  (1) a minimum of 48 hours notice to prepare for the hearing; (2) a staff assistant when the classification team determines that the inmate is illiterate or does not understand English, has a disability that would hinder his ability to represent himself, when the complexity of the issue makes it unlikely that the inmate will be able to properly represent himself, or when the inmate requests assistance; (3) personal appearance by the inmate at the hearing; and (4) a written decision which includes the basis for the team's decision.  *Id.*

The administrative regulations further provide for periodic review of inmates in close management.  *Id.*, 33-601.800(16).  Inmates are reviewed at least once per week for the first 60 days and once every 30 days thereafter.  *Id.*, 33-601.801(16)(a).  When an inmate has not been released to general population and is in any close management status for six months, hearings before the classification team are scheduled every six months.  *Id.*, 33-601.801(16)(c, d, e).

In the instant case, even if Plaintiff had a liberty interest in freedom from assignment to close management, he does not allege that the procedures for assigning him to close management  were inadequate or otherwise deprived him of due process.  For example, he does not allege that Defendants failed to notify him that he was being reviewed for assignment to close management, that Defendants failed to provide a hearing, that he was not afforded an opportunity to present information to the classification team, or that he was not provided a written statement of the reasons for the assignment to close management.  *See* Wolff v. McDonnell, 418 U.S. 539, 564-66, 94 S. Ct. 2963, 2979, 41 L. Ed. 2d 935 (1974) (to satisfy due process concerning disciplinary proceedings involving the potential loss of gain time, the inmate must receive:  (1) written notice of the charges brought against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken).  This court provided Plaintiff an opportunity to allege such violations by advising him of the constitutional standard for alleging a due process violation and directing him to file an amended complaint (*see* Doc. 8); however, Plaintiff has failed to come forth with any allegations that Defendants failed to afford him the procedural protections set forth in the Wolff or the administrative regulations.  Furthermore, the fact that the classification team considered Plaintiff's entire disciplinary record, including reports that were older than two years and a report that was overturned for reasons unknown, does not violate the third requirement of Wolff that there be some evidence to support the factfinders' decision.  *See* Superintendent v. Hill, 472 U.S. 445, 454, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985) ("[R]evocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.").  Therefore, Plaintiff's due process claim should be dismissed.

Accordingly, it is respectfully **RECOMMENDED**:

That Plaintiff's amended complaint (Doc. 15) be **DISMISSED WITH PREJUDICE** for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

At Pensacola, Florida, this 30th day of August 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only.** A copy of objections shall be served upon all other parties. Failure to object **may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** United States v. Roberts, **858 F.2d 698, 701 (11th Cir. 1988).**